## QUINN v. CENTRAL CO.
### No. 8860.

Circuit Court of Appeals, Ninth Circuit.
June 15, 1939.

Charles W. Slack and Edgar T. Zook, both of San Francisco, Cal., for appellant.

Ira Abraham, of Oakland, Cal., for appellees Central Co. and Central Nat. Bank.

Fitzgerald, Abbott & Beardsley, Charles A. Beardsley, M. W. Dobrzensky, James H. Anglim, Edward B. Kelly, and Crellin Fitzgerald, all of Oakland, Cal. (Clifford Burnhill, of Oakland, Cal., of counsel), for appellee Central Bank of Oakland.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appellant suffered an adverse decree in her suit to rescind certain purchases of bonds from a national bank and a trust instrument executed by appellant in which the national bank was named as trustee.

Appellant was born in 1866, and has been a widow since 1902. During the period after 1926 she has had poor health. The Central Bank of Oakland, formerly the Central Savings Bank of Oakland, a California Banking Corporation, hereinafter called the state bank, was organized in 1891.

The Central National Bank of Oakland, a national banking association, hereinafter called the national bank, was organized in 1909. During the times material herein, the two banks carried on their respective businesses in the same premises.

Bothwell was an employee of the national bank for more than ten years prior to January 7, 1926, and appellant, who had carried an account in both banks during that time became well acquainted with him. Bothwell, prior to January 7, 1926, became manager of the bond department in the national bank. Between January 7, 1926, and August 16, 1929, appellant purchased from the national bank 17 groups of bonds having a total par value of $96,000 at a cost of $94,472.50. In each instance, the national bank was the owner of the bonds prior to the purchases by appellant, and sold them to appellant at an aggregate profit of $2,360.33, although the sales prices were the fair market value of such bonds. Two groups of these bonds of a par value of $10,000 and which had cost $9,800 were redeemed, appellant receiving $10,250 on and prior to September 1, 1929. All these bonds were left with the national bank for safekeeping.

On September 24, 1929, the national bank executed a trust instrument, declaring that it held certain property transferred to it by appellant as trustee, with the duty of paying the income from the trust property to appellant monthly during her lifetime. Appellant transferred to the national bank, as trustee, a lot in Oakland, the bonds which she had purchased from the national bank, other bonds having a par value of $15,000, and a promissory note for $20,000 secured by a mortgage on real property located in Nevada. The total par value of the bonds transferred was $101,-000.

After execution of the trust instrument, bonds having a total par value of $19,000, were paid. The national bank also received payments on the promissory note. With the funds so received, the national bank purchased additional bonds having a par value of $27,000, at a cost of $26,933.75. Of these $13,000 par value of bonds were purchased from the national bank, the latter receiving a profit of $471 on the sales. The national bank then held as trustee bonds having a par value of $109,000.

Of the bonds purchased from the national bank prior to the transfer in trust, $74,000 par value, which had cost $72,702.50

subsequently defaulted in payment of interest due. A corporation liable on bonds having a par value of $10,000 and which appellant had bought from the national bank at par prior to the transfer in trust, was adjudicated a bankrupt, and the dividends paid on such bonds amounted to $2,-926.08.

After the bill herein was filed, a number of the bonds were either paid, sold or redeemed:

| | Par | Cost | Received |
|---|---|---|---|
| Bonds purchased prior to transfer in trust. | $29,000 | $28,350 | $19,409.40 |
| Bonds purchased after transfer in trust. | 13,000 | 12,706 | 13,335.00 |

There is on hand of the bonds purchased prior to the transfer in trust $43,000 par value, which cost $42,292.50, and all of which defaulted in payment of interest. There is also on hand of the bonds purchased after execution of the trust $14,000 par value, which cost $14,327.75.

The $13,000 of bonds purchased after execution of the trust instrument by the national bank from itself have all been disposed of. $5,000 of such bonds were sold within a month after their purchase for the same amount as was paid for them. $6,000 of such bonds matured after filing of the bill, and the payment of the amount of such bonds resulted in a profit of $54 to the trust estate. A $1,000 bond was sold after the bill herein was filed at a $15 loss. Another $1,000 bond was sold after the bill herein was filed at a profit of $215.

On March 2, 1933, the national bank closed its doors, and thereafter a conservator was appointed to take charge of the bank. The conservator was succeeded by a receiver. Subsequently the national bank sold its trust department to the state bank by an agreement by which the state bank assumed certain liabilities of the former. Subsequently, Central Company replaced the receiver as liquidating agent of the national bank.

Appellant by the bill, filed August 22, 1933, sought to rescind the purchases of bonds prior to the transfer in trust on the ground that a confidential relationship existed between her and the bank, either as trustee and cestui que trust, or principal and agent, and that the national bank had violated the same. She sought also to rescind the trust instrument, and the purchases of bonds after execution thereof on the ground that the national bank had violated the duties of a trustee. These alleged violations of trustee's duties were

purchases by the trustee for the cestui of the trustee's own property.

Appellant testified that she trusted and relied upon Bothwell's advice.

The trial court found that prior to the transfer in trust the relationship between the national bank and appellant was that of buyer and seller and not that of principal and agent; that appellant did not intend to create a trust until four or five months prior to the date of the trust instrument; that no fraud was committed in sale of bonds, prior to transfer in trust; that the purchases by the national bank as trustee from itself were fair, and that appellant acquiesced in all purchases. There were other findings which are challenged, but it is unnecessary to relate them here. Decree was entered for appellees.

As to the bonds purchased from the national bank prior to the execution of the trust instrument, appellant contends that a trust relation existed between the bank and appellant. Upon oral argument, counsel for appellant stated that there was no contention that the trust relationship arose out of a principal and agent relation, for appellant did not contend that the national bank was appellant's agent in the purchase of such bonds. Likewise, there is no contention that a resulting trust arose because of actual fraud, for appellant's counsel in the trial stated "that there was nothing in the bill of complaint in any way squinting at a fraudulent representation in the purchase of any of the securities".. In this connection there is considerable argument concerning fraud. The fraud asserted, however, is not actual fraud relied on to raise a resulting or involuntary trust under Cal.Civ.Code, § 2224. The asserted fraud appears, if at all, from the alleged fact that there was an actual voluntary trust and a violation by the trustee of his duty which violation is declared to be fraud by Cal.Civ.Code, § 2234.

Appellant's contention is, as stated in her reply brief: "The trust, from its very inception, prior to the execution of the instrument of trust, had all the indicia which Professor Pomeroy, in 3 Pomeroy, Equity Jurisprudence, secs. 991, 992 and 997 (4th ed.) * * * says are required to create a voluntary, express and active, private trust, namely, a definite res or subject, an object, a trustee in which the res would vest, and cestui que trustent."

Thus it can be seen that the question is a very narrow one, and is whether or not an express trust was created. Of course in a sense the national bank may be said to sustain a trust relationship because it held the bonds for safekeeping, but the trust duty in that sense was very limited. What is actually meant by appellant is that an express trust imposing active and usual duties on the trustee was created.

Of the methods of creating such a trust which are listed in 1 Restate. of the Law, Trusts, § 17, the applicable one is set forth in (b) as follows: "A trust may be created by * * * a transfer inter vivos by the owner of property to another person as trustee for the transferor or for a third person". It is essential to the creation of such a trust, that "the settlor properly manifests an intention to create a trust". 1 Restate., supra, § 23; 25 Cal.Jur. 280, § 139; 1 Bogert, Trusts and Trustees 195, § 45. These rules are substantially stated in Cal.Civ.Code, § 2221.

With respect to such an intent, the only evidence favorable to appellant was her own testimony. She testified that in 1926 she told Bothwell "that I wanted to put my property in a fund, or some estate, where it would be cared for in the event of my death, so that my daughter and my grandson would benefit"; that Bothwell "said the bank would form a trust, or a trust would be formed in the bank, and, in the meantime, they would purchase bonds for me, from time to time, as I acquired the money and sold the property, to create this trust fund"; that appellant and Bothwell discussed some Nevada real estate which appellant owned and that Bothwell "was to buy bonds for my trust fund; and hold them in the bank until I could dispose of this property, and then, he advised me, that the better thing to do was to have a trust fund created". She thereupon testified that she accepted such advice with the intention of creating a trust "after" she had disposed of the Nevada realty. The real property was not sold until February 8, 1928.

Appellant further testified that after the sale of the Nevada real estate she talked with Bothwell and others about the creation of a trust; that she was ill and wished to go to Mayo Brothers, in Rochester, Minnesota; that in July, 1929, she informed the national bank's assistant trust officer of that fact, and "I told him what I wanted to have done with reference to the trust, and who the beneficiaries were to be, and I wanted the trust arranged so that I could

have the income from it during my lifetime and then it would ultimately go to my daughter and my grandson. I gave [him] a memorandum of those provisions".

Based upon the foregoing evidence, we think the finding that appellant "did not intend to create a trust until approximately four * * * or five * * * months prior to September 24, 1929" is correct. Her intent prior to that time was one to create a trust sometime in the future (1 Restat., supra, 79 § 26) and therefore no trust was created. The national bank cannot be held liable for the violation of a trust duty which did not exist.

 As to the bonds purchased after execution of the trust instrument, a different rule applies. It is a breach of the duty of loyalty for a trustee to sell his individual property to the trust estate. Dean v. Shingle, 198 Cal. 652, 658, 246 P. 1049, 46 A.L.R. 1156; Cal.Civ.Code, §§ 2229, 2230; 3 Bogert, Trusts and Trustees 1541, § 489; 1 Restate., supra, 435, 436, § 170. Therefore, the national bank violated its duty in purchasing the $13,000 of bonds from itself. There is nothing in the record to show any violation of a trust duty with respect to the purchases of the remaining bonds. In fact, the evidence affirmatively showed, as the trial court found, that such bonds were purchased at the then fair market value.

The only possible claim, insofar as is urged, is one relating to the $13,000 of bonds purchased by the national bank from itself. after execution of the trust instrument. Appellant was entitled to hold the national bank liable for any profit received by it on the transactions, and for any loss she suffered on resale of the property. 3 Bogert, Trusts and Trustees 1541-1544, § 489; 1 Restate., supra, 560-562, § 206. On oral argument, appellant specifically disclaimed any right to recover on those grounds, and limited her claim only to a right of rescission.

 This contention is based on the theory that where the trustee wrongfully purchases property from himself individually, the beneficiary may compel the trustee to take back the property sold and refund to the trust estate the amount of the purchase price. 3 Bogert, Trusts and Trustees 1542, § 489; 1 Restate., supra, 576 § 210; compare Cal.Civ.Code, § 2237, 2238. Here, in effect, that has already been done, without loss to appellant. The entire group of bonds have either matured or been sold. The trust estate is back in the same position as it was. No reason exists for rescission. Appellant's claim is limited to the profit made by the national bank, and the $15 loss on the resale of a $1,000 bond, which she waives. Under these circumstances no reason exists for any relief.

The court below permitted revocation of the trust instrument according to its terms. Both appellant and the trustee so desired. We approve the course taken.

Affirmed.